UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERIMIA BARNES,

        Plaintiff,                            Hon. Ellen S. Carmody

v.

                                          Case No. 1:14-cv-1166

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On February 10, 2015, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords

to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 27 years of age on his alleged disability onset date. (Tr. 173). He possesses an eighth grade education and worked previously as a fast food worker. (Tr. 70, 93). Plaintiff applied for benefits on January 12, 2012, alleging that he had been disabled since August 1, 2001, due to bi-polar disorder, manic depression, anxiety, anti-social traits, and seizure disorder. (Tr. 173-74, 224). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 129-72). On March 13, 2013, Plaintiff appeared before ALJ Luke Brennan with testimony being offered by Plaintiff and a vocational expert. (Tr. 77-128). In a written decision dated June 13, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 62-72). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2006. (Tr. 64). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v.*

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired he suffered from: (1) methamphetamine abuse with a history of polysubstance dependence and abuse; (2) psychotic disorder; and (3) history of repeated dislocations of the left shoulder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 64-65). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired he retained the capacity to perform sedentary work with the following limitations: (1) he can only occasionally reach with his non-dominant left upper extremity; (2) he cannot be exposed to workplace hazards such as unprotected heights and moving machinery; and (3) he is limited to simple, routine, repetitive tasks involving no more than occasional interaction with co-workers, supervisors, and the public. (Tr. 65).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely

question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 12,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 118-27). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I. **The ALJ Properly Evaluated the Opinion Evidence**

Plaintiff argues that he is entitled to relief because the ALJ failed to properly evaluate the opinions offered by the following care providers: (1) Dr. Muktiraj Mehta; (2) Susan Yoder; (3) Melinda Sevarns; (4) Kelly Dziedzic; and (5) the "jail diversion specialist."

A. Dr. Mehta

Plaintiff has identified the results of various examinations conducted by Dr. Mehta. (Tr. 1277-78, 1282-83, 1299-1300, 1344). The examinations in question occurred between January 2009 and November 2009, several years after Plaintiff's insured status expired. Dr. Mehta did not express, following these examinations, any opinion regarding Plaintiff's ability to function. Furthermore, the doctor's observations regarding Plaintiff's then-current condition, namely that Plaintiff's condition and ability to function improved with abstinence and proper medication, is not

6

inconsistent with the ALJ's RFC determination.

B.   Susan Yoder

Plaintiff cites the results of an October 23, 2007 examination by Yoder, a clinical nurse specialist. (Tr. 1375). Yoder did not express any opinion about Plaintiff's restrictions or ability to function. Moreover, Yoder's observations, that Plaintiff was improving with medication and abstinence, are not inconsistent with the ALJ's RFC determination.

C. Melinda Sevarns

On February 7, 2012, Sevarns, one of Plaintiff's friends, completed a report regarding Plaintiff's activities. (Tr. 248-55). Sevarns indicated that she had only known Plaintiff for two years. (Tr. 248). Thus, by the time Sevarns met Plaintiff his insured status had long since expired. Sevarns observations were not relevant in this matter and, therefore, the ALJ did not err in failing to discuss such.

D.   Kelly Dziedzic

Plaintiff cites treatment notes authored by Dziedzic on July 24, 2008, almost two years after Plaintiff's insured status expired. (Tr. 1364-72). Dziedzic observed that Plaintiff had only recently stopped using drugs and was experiencing difficulties interacting with others. Dziedzic's observations are not inconsistent with the ALJ's RFC assessment. Dziedzic did not express any opinion regarding Plaintiff's ability to function. Moreover, even if she had expressed such an opinion there is no suggestion that such would have concerned Plaintiff's functional ability

prior to the expiration of his insured status.

### E. The "Jail Diversion Specialist"

Plaintiff does not provide the identity of the "jail diversion specialist" whose opinion the ALJ allegedly failed to properly evaluate. It appears that Plaintiff is referring to Theresa Wagner and Mr. Kelly, the other individuals identified in this section of Plaintiff's pleading. Regarding Ms. Wagner and Mr. Kelly, Plaintiff identifies treatment notes authored on May 18, 2010, and August 11, 2008, long after the expiration of his insured status. (Tr. 1268, 1351). While these treatment notes suggest that Plaintiff was functioning at a level below that recognized by the ALJ, there is no indication that such relates to or informs Plaintiff's functional ability prior to the expiration of his insured status.

In sum, Plaintiff has failed to demonstrate that any of these individuals offered any opinion concerning the impact of his impairments or his ability to function. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). Moreover, the examinations and observations on which Plaintiff's claim are based all occurred well after the expiration of his insured status and there is no indication that such concerned or related to Plaintiff's ability to function prior to the expiration of his insured status. Accordingly, this argument is rejected.

**II.       The ALJ Properly Relied on the Vocational Expert's Testimony**

According to Social Security Ruling 00-4p, whenever a vocational expert "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT [Dictionary of Occupational Titles]." Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704 at *4 (S.S.R., Dec. 4, 2000); *see also*, *Lindsley v. Commissioner of Social Security*, 560 F.3d 601, 602-03 (6th Cir. 2009). The ALJ complied with this provision, specifically asking the vocational expert whether her testimony conflicted with the DOT. (Tr. 127). The vocational expert responded that her testimony was, in fact, consistent with the DOT. (Tr. 127). Plaintiff concedes this, but argues that he is nevertheless entitled to relief because "no DOT codes were provided by the VE [vocational expert]."

Plaintiff's argument is misplaced. At step five of the sequential analysis, the ALJ may consider "reliable job information" such the Dictionary of Occupational Titles. *See Lindsley*, 560 F.3d at 603. The ALJ is also permitted to rely on the testimony of vocational experts. *Id.* Not surprisingly, "[o]n occasion," a vocational expert's testimony "conflicts with the information set forth in the DOT." *Id.* In light of this, the Sixth Circuit holds that:

> to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on ALJs to ask the VE if the evidence that he or she has provided "conflicts with [the] information provided in the DOT." ALJs must also "obtain a reasonable explanation for ... apparent conflict[s]" if the VE's evidence "appears to conflict with the DOT."

*Id.* (internal citation omitted).

9

The ALJ complied with this requirement. Plaintiff's argument that the ALJ was required to additionally obtain testimony from the vocational expert regarding the DOT is premised upon a belief that the ALJ is not permitted to rely on the testimony of a vocational expert alone, but must instead also obtain evidence from the DOT. Plaintiff has cited no authority for this proposition. To the contrary, the Sixth Circuit holds that the testimony of a vocational expert is sufficient for the ALJ to meet his burden so long as such testimony does not conflict with the DOT. *Id.* at 602-03. The ALJ determined from the vocational expert that her testimony was not inconsistent with the DOT. To the extent Plaintiff believed that such a conflict existed, the burden rested with him to question the vocational expert about such. *See, e.g., Aljahmi v. Commissioner of Social Security*, 2014 WL 4964378 at *10 (E.D. Mich., Oct. 2, 2014). Accordingly, this argument is rejected.

**III.       The ALJ Properly Evaluated Plaintiff's Impairments**

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

Plaintiff asserts that he is entitled to relief because the ALJ failed to "classify a

multitude of [his] physical and mental conditions as severe." The shortcoming in Plaintiff's argument is that it is based upon evidence which post-dates his date last insured. While the administrative record in this matter is quite extensive, the vast majority of the medical evidence in this matter concerns Plaintiff's impairments and condition subsequent to the expiration of his insured status. The evidence which predates the expiration of Plaintiff's insured status reveals that the ALJ's assessment of Plaintiff's impairments is supported by substantial evidence.

Treatment notes dated October 28, 2004, indicate that Plaintiff was diagnosed with bi-polar disorder for which he was provided medication. (Tr. 306). Plaintiff was also drinking "quite a bit," smoking marijuana, and "also using meth." (Tr. 306). Treatment notes dated January 2, 2005, indicate that "it is impossible to say [if Plaintiff is bi-polar] since he has been using drugs, especially extensive long term use of whiskey for the past three years." (Tr. 300). Treatment notes dated January 11, 2005, indicate that Plaintiff had stopped taking his medication and was experiencing "mood fluctuation." (Tr. 305). Plaintiff reported that medication had previously "helped in stabilizing his mood." (Tr. 305). Plaintiff's medication regimen was modified. (Tr. 305). Treatment notes dated April 1, 2005, indicate that Plaintiff was taking his medications. (Tr. 303). Treatment notes dated December 22, 2006, indicate that properly treating Plaintiff is difficult because he "does not follow up for longer than 3-4 months at most." (Tr. 298).

While treatment records which post-date the expiration of Plaintiff's insured status might perhaps support Plaintiff's position that he suffers from a multitude of physical and mental impairments, the record prior to the expiration of Plaintiff's insured status supports the ALJ's conclusion that Plaintiff suffered from (1) methamphetamine abuse with a history of polysubstance dependence and abuse; (2) psychotic disorder; and (3) history of repeated dislocations of the left

11

shoulder. Moreover, even if the record suggests that Plaintiff suffered from additional impairments, any such error is harmless. The ALJ found that Claimant suffered from multiple severe impairments and proceeded through all five steps of the sequential analysis. In so doing, the ALJ discussed at length the evidence of record. Moreover, the ALJ's RFC determination is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. The Court further finds that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3). A judgment consistent with this opinion will enter.

Date: December 28, 2015  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge